**SO ORDERED.**

**SIGNED this 13 day of October, 2016.**

_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| B6USA, INC. | CASE NO. 16-04666-5-JNC |
| | CHAPTER 11 |
| **Debtor** | |
| -------------------------------------------------------- | |
| B6USA, INC., | ADV. PRO. NO. 16-00149-5-JNC |
| **Plaintiff** | |
| v. | |
| STEPHEN M. HITE, JR. | |
| **Defendant** | |
| -------------------------------------------------------- | |

### MEMORANDUM OPINION ON ORDER ALLOWING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION

The matters before the court in this adversary proceeding are the "Emergency Motion for Preliminary Injunction, in Addition to Motion for Temporary Restraining Order Against Stephen M. Hite, Jr." filed by the chapter 11 debtor-in-possession and plaintiff B6USA, Inc. ("B6USA") on September 23, 2016, Dkt. 4 (the "B6 Motion"), the "Defendant's Emergency Motion for Preliminary Injunction and Temporary Restraining Order" filed by the defendant Stephen M. Hite, Jr. on September 26, 2016, Dkt. 11 (the "Hite Motion"), and the response of Mr. Hite to the B6

Motion filed September 28, 2016, Dkt. 14 (the "Hite Response").  A hearing on the B6 Motion and the Hite Motion (together, the "Cross-Motions") took place in Greenville, North Carolina on September 29, 2016.

B6USA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 6, 2016. On September 22, 2016, B6USA filed the complaint in this adversary proceeding, among other things seeking injunctive relief against Mr. Hite with respect to alleged interference with the debtor's business operations and corresponding use of the name "BaySix" in his post-petition business operations. Dkt. 1. On September 23, 2016, B6USA filed its emergency motion for preliminary injunction and temporary restraining order, seeking the same relief on an interim basis. Dkt. 4. On September 26, 2016, Mr. Hite filed an answer to the complaint, a counterclaim seeking injunctive relief against B6USA with respect to the use of the name "BaySix," and a cross-motion for temporary restraining order and preliminary injunction.  Dkts. 10, 11. As a result, in the Cross-Motions both B6USA and Mr. Hite contend that each owns the sole and exclusive right to the trade name and mark "BaySix" and similar names, and that each is actively interfering with the other's legitimate business operations and creating confusion in the marketplace through misuse of the name "BaySix," the operation of websites including the name "baysix" (or similar names and spellings), and holding itself out to the public as having an affiliation with the name "BaySix."

This court has jurisdiction over this Adversary Proceeding and the matters raised in the Cross-Motions pursuant to 28 U.S.C. §§ 157 and 1334, and by the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. The parties agree that the matte is a core proceeding. In its complaint, the plaintiff affirmatively consented to the entry of final judgment by this court, and by filing his counterclaim

in this court, the defendant has impliedly consented to entry of final judgment by this court. In addition, both parties affirmatively sought injunctive relief specifically from this court.

At the hearing, both parties presented testimony but no documentary evidence seeking to establish an exclusive right to use the name "BaySix" (and similar names and spellings) and to otherwise operate the business associated with that name. The court took the matter under advisement, and the parties submitted supplemental briefs on October 3, 2016. Dkts 20, 21. Due to the exigency of the matter, the court entered a short order allowing the plaintiff's motion for preliminary injunction and denying the defendant's motion for preliminary injunction on October 4, 2016.  Dkt. 23. This memorandum opinion further sets forth the basis for the court's ruling.

## FACTS

B6USA is a North Carolina corporation that manufactures, markets, and sells athletic apparel, jewelry, decals, and other accessories. It is currently operating as a debtor-in-possession under chapter 11 of the Bankruptcy Code, and its petition indicates that it also does business as "Bay Six," "Raleigh Embroidery," "MyBaySix," "BaySixUSA," "BAYSIX USA.COM," and formerly did business as "BaySix Group, Inc." Dkt. 1 at 1. The petition was signed by Katherine D. Hite as its president. Dkt. 1 at 4. Ms. Hite and the defendant, Mr. Hite, were married at the time of B6USA's formation and throughout its pre-bankruptcy operational history, but separated in 2015 and currently are in the process of dissolving their marriage.

The testimony established that Ms. Hite incorporated B6USA in March of 2005, and that she is the sole shareholder and the president, secretary, and treasurer of the corporation. B6USA was formed upon the closing and dissolution of TRG, Inc., a corporation owned by the defendant Mr. Hite that he used to operate a similar if not the same business. TRG apparently suffered from its own financial difficulties at that time including debts owed to the state and federal taxing

authorities. Its business operations were gradually "blended in" with those of B6USA's over an approximate two year period. No evidence was presented by either party to show that Mr. Hite was ever officially named an officer or director of B6USA, or that he ever held any shares in the company.

Both parties acknowledged, however, that Mr. Hite was heavily involved in the formation and subsequent operation of B6USA for over a decade, serving as its manager or chief operating officer from inception until his employment was terminated in September 2016. In that capacity, he communicated and met with trade vendors and suppliers, negotiated and executed contracts on behalf of B6USA, and regularly interacted with customers. He traveled overseas extensively, making numerous trips to China and Honduras to meet with manufacturers and place orders. Mr. Hite testified that B6USA was established with his wife Ms. Hite as the sole shareholder in order to obtain certain perceived advantages associated with a woman-owned business, but that she had very little involvement in its daily operations and management during the ten years he operated the business. He was also concerned about the debts owed by TRG, particularly the taxes owed. Mr. Hite also testified that he and Ms. Hite had an oral agreement from the time of the formation of the corporation that Mr. Hite could purchase B6USA for $1.00, but no written evidence of this agreement has been presented in the case.

Mr. Hite maintains that categorically all of the marks and everything else associated with the name "Baysix" originated with and were exclusively controlled by him at all pertinent times, including the decade of B6USA use. Mr. Hite stated that he and a deceased former business partner first created the term "baysix" over twenty years ago, and that the business use of the name originated with his first operating corporation, Bay Six Group, Inc. He contends that the name and

4

mark were subsequently used in his other businesses, including B6USA and its immediate predecessor TRG.

Mr. Hite testified that he created the term, generated the brand associated with "baysix," never ceded control over the term to B6USA or anyone else, and always intended to use the term within the athletic apparel industry only through business entities controlled by him. He admitted that the term or mark "baysix" was not registered with any governmental entity, such as the United States Patent and Trademark Office, until September of 2016, a few days after this bankruptcy case was filed, and that he allowed B6USA to use the name and mark during its pre-bankruptcy decade of operations under his helm. Mr. Hite contends that the debtor corporation's ten year use constituted at most only an "implied license" for use of the term "baysix" by it, and that he could revoke the license at will. No evidence, whether documentary or testimony, regarding a written licensing agreement or any other arrangement between B6USA and Mr. Hite (or any of his prior corporations) for use of the term was presented.

Marital difficulties arose between Mr. Hite and Mrs. Hite, and in January 2016, while still employed by B6USA, Mr. Hite formed a new North Carolina limited liability corporation, Baysix Group, LLC (the "LLC") without the knowledge of Ms. Hite and despite his continued employment at B6USA. Mr. Hite testified that he intended to operate the LLC as an "import business" using the Baysix mark. He considered merging his new LLC with an already existing company owned by an unrelated third party, but ultimately decided to proceed on his own. It is unclear exactly when Mr. Hite began actively operating the LLC or to what extent prior to September 2016, but he admitted to using the term "baysix" as early as January of 2016 in connection with naming and forming the LLC, and his business operations through the LLC significantly increased at and after the time of the bankruptcy case filing.

5

On September 6, 2016, B6USA filed its chapter 11 petition. No detailed evidence or testimony was provided as to the primary motivations for the filing of this bankruptcy, other than Ms. Hite's desire to reorganize the business. In the week preceding the filing of the petition, B6USA's landlord[1] commenced eviction proceedings as to B6USA's primary business location, a warehouse in Raleigh, North Carolina, for unpaid rent. The day after the bankruptcy filing, B6USA sought turnover of assets that it contended Mr. Hite improperly removed from the business (a matter that was resolved by consent), *see* Dkts. 5, 11, 14, and 30, suggesting that the filing was precipitated by the disagreement as to who owned the physical assets as well as the intangible assets that are the subject of this adversary proceeding, and the immediate risk of loss to B6USA.

B6USA terminated Mr. Hite's employment on September 8, 2016. Thereafter, Mr. Hite, through his newly formed LLC, contacted specific customers of B6USA and obtained new orders from those customers. Further, he continued to meet with regular vendors of B6USA. Mr. Hite did not deny that he regularly used the wordmarks "baysix" and "baysixusa" in the LLC's operations. He conducted business on behalf of the LLC while still employed by B6USA, as he admitted that at least as of September 2, 2016, both B6USA and the LLC sold products related to the "baysix" brand. He acknowledged continuing use of the brand name post-petition as well. In addition, at least from September 2 through September 6, Mr. Hite removed inventory and other assets from B6USA's warehouse. Mr. Hite also filed applications to trademark several variations of "baysix" and "baysixusa" with the United States Patent and Trademark Office on September 9, 2016, after the filing of B6USA's petition.

Additionally, Mr. Hite managed B6USA's website and domain name during his management there. Consequently, upon his termination, many orders placed through B6USA's

---

[1] Ms. Hite's parents own the entity that leases the warehouse to B6USA.

6

website were apparently diverted to, processed, and partially fulfilled by Mr. Hite's LLC instead of B6USA.  Kelly Gibson, the vice president of B6USA, testified that she fielded numerous phone calls in September 2016 from customers who did not understand with which corporate entity they placed their orders, as these customers assumed that they were dealing with B6USA and not Mr. Hite's new LLC.

The testimony further established that while its legal corporate name is "B6USA, Inc.," the debtor corporation at times uses the term "baysix" on its vendor agreements, emails, and order forms. B6USA also uses the term "baysix" in its current corporate logo, although no inventory items or documents showing the logo were presented as evidence. The LLC's name is "Baysix Group," and, as noted above, the terms "baysix" and "baysixusa" are being used in its sales and other business operations. Citing customer confusion and arguing superior prior right, in the Cross-Motions both parties seek the exclusive right to continue using, conducting business under, and operating a website with a the name or trademark "baysix" and any similar terms or spellings, and thereby also prohibit the other party from such activity.

## DISCUSSION

"Preliminary injunctions are an extraordinary remedy whose primary function is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit." *Atl. Pinstriping, LLC v. Atl. Pinstriping Triad, LLC*, No. 3:16-CV-547-GCM, 2016 WL 5376294, at *3 (W.D.N.C. Sept. 23, 2016) (citing *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 525 (4th Cir. 2003)). A plaintiff seeking a preliminary injunction is required to make a clear showing on the four following elements:

(1) plaintiff is likely to succeed on the merits;

(2) plaintiff is likely to suffer irreparable harm in the absence of preliminary relief;

(3) the balance of the equities tips in plaintiff's favor; and

(4) an injunction is in the public interest.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008).

In *Winter*, the Supreme Court emphasized that a plaintiff must demonstrate more than just a "possibility" of irreparable harm, and must make a strong showing of likelihood of success on the merits. *Winter*, 129 S. Ct. at 375. It further held that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." 129 S. Ct. at 376-77. In 2010, the United States Court of Appeals for the Fourth Circuit explained the *Winter* test and distinguished it from that court's prior injunction standard as articulated in *Blackwelder Furniture Co. v. Selig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). *See The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010) (memorandum opinion), *reissued in pertinent part*, 607 F.3d 355 (4th Cir. 2010).

In this case, both parties seek injunctive relief against the other. Accordingly, in order to prevail, each has the separate burden of making a clear showing with respect to all four *Winter* elements.

1. **Likelihood of Success on the Merits**

Because the mark was not registered prior to the filing of the bankruptcy case, the parties agree that a determination of likelihood of success on the merits will turn on an analysis of each party's common law trademark rights. They also agree that common law ownership rights are acquired by "actual use" in a given market. Based on the evidence before this court, the law cited by both parties establishes that B6USA is more likely to prevail on the merits of ownership of the name "BaySix."

Specifically, Mr. Hite relies upon the following analysis from *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003):

> At common law, trademark ownership is acquired by actual use of the mark in a given market. *See United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 97-98, 39 S. Ct. 48, 63 L. Ed. 141 (1918). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1219 (9th Cir. 1996); *see Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1105 (6th Cir. 1991) ("[O]wnership rights flow only from prior appropriation and actual use in the market."); *see generally* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* §§ 16:1, 16.18 (4th ed. 2003). The owner of a mark acquires "both the right to use a particular mark and the right to prevent others from using the same or a confusingly similar mark." *Homeowners Group,* 931 F.2d at 1106. Accordingly, trademark ownership confers an exclusive right to use the mark. *See United Drug,* 248 U.S. at 98, 39 S. Ct. 48.

332 F.3d at 267.

Further, and as noted in Mr. Hite's brief, "[w]hen more than one user claims the exclusive right to use an unregistered trademark, priority is determined by 'the first actual use of [the] mark in a genuine commercial transaction.'" *Id.* at 268 (quoting *Allard Enters., Inc. v. Advanced Programming Res., Inc.,* 146 F.3d 350, 358 (6th Cir. 1998)).

However, given an elapsed decade of use by B6USA with the consent of the objecting party, the question here is not whether Mr. Hite or Ms. Hite first used the mark in commerce twenty years ago, but whether Mr. Hite individually (or his new LLC) used the name and mark before it was used by B6USA, and whether he contributed the name and mark to it as a successor corporation. No evidence was presented to show that Mr. Hite ever used the name "BaySix" individually; instead, at best, any use prior to that of B6USA was through other corporate entities that pre-dated the debtor, and now by the LLC formed ten years after B6USA and its intervening continuous use. Thus, as between Mr. Hite (and his LLC) and B6USA, the debtor corporation first used the mark in commerce, the use was continuous for a decade, and the use continued unopposed

9

by Mr. Hite—indeed with his contribution, acquiescence, management and full participation. The public in September 2016 associates the name and mark with B6USA, as shown by the numerous phone calls fielded by its employees after dual use began. Accordingly, the court finds that B6USA has demonstrated a greater interest and likelihood of success on the merits with respect to common law ownership of the name "BaySix."

B6USA also argued that Mr. Hite's breach of fiduciary duty should result in awarding the mark to B6USA even if he created it, citing a patent case by way of analogy. *See Stonecraft, LLC v. Slagter (In re Stonecraft, LLC)*, 322 B.R. 623 (Bankr. S.D. Miss. 2005) (finding that the manager of a debtor corporation breached his fiduciary duties by naming himself, and not the corporation, the "inventor" of an item on which a patent was sought, when the invention "was reduced to practice" by the debtor corporation). While the concept may have merit, any proof that Mr. Hite breached a fiduciary duty to B6USA through his secret formation and operation of a competing business using a very similar name (and compounded the problem by belatedly attempting to trademark the names post-bankruptcy), must wait for a full trial of this matter.

*Stonecraft* is distinguishable on its facts and the law from the present posture of this case. First, the matter at hand is not a patent case, and patent and trademark laws differ significantly. Generally, a patent is owned by the inventor of the item for which a patent is sought, or in some cases, particularly where addressed in advance by contract, by the inventor's employer. *In re Stonecraft* at 630. Ownership of a trademark is determined by other legal standards, such as the first and continuing unopposed actual use in the market. *See Emergency One, Inc.*, 332 F.3d at 367. Second, the patent rights in *Stonecraft* did not pre-exist the plaintiff company, and were created by its employee. It was the employee's attempt to patent an invention that was created *while* he was an employee that constituted the breach of fiduciary duty. Here, the mark was created

10

prior to the formation of the company. No registration, licensing agreement or other documentary evidence related to the formation, transfer, or right of use of the baysix name and marks by either party was presented. Absent a clear documentary path on creation and use, the *Stonecraft* case has limited applicability at this stage of the present case and the fiduciary duty issue will be saved for trial or other disposition later in this case.

Nevertheless, the plaintiff did establish, and Mr. Hite cannot escape, that among other things he never used the name and marks individually in commerce, but rather moved the use from company to company over many years; that he voluntarily contributed the name to B6USA when it was formed in 2005; that for ten years he actively, even enthusiastically, used the name and marks in an on-going and then successful business (B6USA) that he believed or considered to be his own (as shown by the $1.00 stock purchase option he says existed); that he created confusion in the marketplace by secretly using the same or substantially similar names and marks at around and after bankruptcy was filed by B6USA; and that unlike B6USA, the LLC does not have an established and protracted time-line of parallel use of the name and marks. While open questions remain for trial, and it remains to be seen whether either party can meet its full burden for entry of a permanent injunction, at least at this early stage of the case B6USA has demonstrated a significantly greater likelihood of success on the merits than Mr. Hite.

Furthermore, even if neither party presented clear evidence necessary to meet its burden, but instead evidence of determination of likelihood of success was largely advocated on the lack of contrary evidence from the other side, the court would still find itself in a position where it cannot allow the status quo (mutual use of the same term) to continue due to the clear evidence of public confusion resulting from dual use. Fortunately, the Seventh Circuit established a "tie-

11

breaking determiner" under similar circumstances. *See TMT North America, INC. v. Magic Touch GmbH*, 124 F.3d 876 (7th Cir. 1997).

> Denying both parties injunctive relief . . . "is not a comfortable posture for the Court to assume" because it "is tantamount to holding that both parties are free to offer their products for sale in the same marketplace." *Johanna Farms [Inc. v. Citrus Bowl, Inc.]*, 468 F. Supp. [866] at 882 [(E.D.N.Y.1978)]; see generally 4 [J. Thomas] McCarthy, [McCarthy on Trademarks and Unfair Competition] § 31:10 [(4th ed. 1997)]. The law therefore allows the senior user's claim to be revived from estoppel if the senior user can show that "inevitable confusion" would result from dual use of the marks. *SunAmerica [Corp. v. Sun Life Assurance Co. of Canada]*, 77 F.3d [1325] at 1334 (11th Cir.) (*SunAmerica II*), cert. denied, --- U.S. ----, 117 S. Ct. 79 (1996)]; *Coach House [Restaurant, Inc. v. Coach and Six Restaurants, Inc.]* , 934 F.2d [1551] at 1564 [(11th Cir. 1991)]*; see also Creative Computer Visions, Inc. v. Laser Learning Techs*., Inc., 931 F. Supp. 455, 458 (S.D.W. Va. 1996); *cf. Iodent Chem. Co. v. Dart Drug Corp*., 207 U.S.P.Q. 602, 607, 1980 WL 30145 (T.T.A.B.1980). "Inevitable confusion" is "an increment higher than that required for a finding of likelihood of confusion." *SunAmerica II*, 77 F.3d at 1334 n. 3 (quoting *Coach House*, 934 F.2d at 1564).

124 F.3d at 886.

Because the plaintiff has established a likelihood of showing that it owns the name due to first use in commerce (as between the two parties) plus years of exclusive use with the active participation and agreement of the other party, the court does not need to adopt the Seventh Circuit "tie-breaker" test. However, should it later be determined that the plaintiff did not meet its burden on this leg of the *Winter* test, then as an alternative basis, the court finds that, in addition to B6USA being the senior user as between it, the LLC and Mr. Hite individually, the parties have shown not only a likelihood of confusion but the existence of marketplace confusion in fact that must be addressed until further and better evidence can be presented. Consequently, if considered on the Seventh Circuit tie-breaker test, B6USA would prevail for preliminary injunction purposes.

**2.     Irreparable Harm**

The evidence established that there is confusion among customers and vendors with respect to the two competing companies. The evidence further established that customers *are* placing

orders with the LLC – even if they think they are placing them with B6USA; thus, the LLC is taking business away from the debtor, whether or not customers know that they are choosing one corporate business over the other. Weathering honest competition is a fact of the marketplace, but based on the limited evidence presented to the court, this does not appear to be honest competition. Mr. Hite let B6USA exclusively use the name and mark for over ten years, and in fact oversaw such use for his own benefit. Now he seeks to pull the rug out from under the debtor by secretly setting up a competitor and driving customers who thought they were still dealing with B6USA to that new business (the LLC). If it cannot use the business name that is the core of its operations, a name that Mr. Hite consented for it to use, B6USA will have no business to reorganize. Its former manager will have absconded with the name and left B6USA's third party creditors unpaid and forever harmed. The LLC, on the other hand, only recently started operations and does not have a field of creditors with the breadth and depth of the debtor's.

On the other hand, Mr. Hite did not present any evidence of irreparable harm to him if B6USA is not enjoined from operating under its name and using its website. Accordingly, the debtor has demonstrated that it will very likely suffer irreparable harm if Mr. Hite is allowed to continue operating the LLC under the name "BaySix" and otherwise hold himself out as operating the same business as the debtor.

**3.    Balance of the Equities**

Interestingly, Mr. Hite did not provide any argument in his brief that the equities weighed in his favor. Presumably, he maintains that allegedly creating the name twenty years ago is sufficient, entitles him to continue to future exclusive use, and that the debtor's building of the brand "BaySix" by exclusive use with his permission and participation is meaningless. To the contrary, the evidence showed that Mr. Hite breached his fiduciary duty to B6USA by starting a

competing business using its name, vendors, and customers. He blatantly and secretly took B6USA's marketplace and goodwill. Whether that duty was to creditors (due to insolvency) or shareholders, he had a duty not to usurp the debtor's business and business opportunities. If Mr. Hite believed that B6USA needed to be wound down and that he truly owned the intellectual property, there is an appropriate avenue to seek that relief. Starting a new business with the same name and soliciting the debtor's vendors and customers is not it.

Finally, Mr. Hite's own testimony established a series of questionable corporate movements and motives. He ceased using TRG in order to avoid paying creditors and taxes incurred in that business. He moved the Baysix name and mark to a new corporation with shares issued in his wife's name over a two year period because of his perception that a corporation held in the name of a woman would prove advantageous, yet his statement that he held a right to buy all of her stock for $1.00, even if unenforceable, shows that Mr. Hite retained all control and actual ownership for himself.[2] The series of movements of the name and mark across at least four companies while leaving creditors behind in both TRG and B6USA when financial difficulties arose creates a substantial question regarding Mr. Hite's true motivations.

It is apparent to the court that this dispute is inextricably wrapped up in Mr. and Ms. Hite's divorce, but because the protection of the bankruptcy court was sought on behalf of the corporate debtor, this court's interest is in the estate and the creditors of the debtor, not either of these individuals. It is possible that neither of the individuals has looked after the best interest of the debtor.[3]

---

[2] The court suspects that TRG's tax problems and Mr. Hite's fear of the filing of a tax lien against him personally was more of a motivating factor, although this was not explored in his testimony given at the evidentiary hearing on this matter.

[3] There is some evidence that Ms. Hite also has competing loyalties, as she began an eviction action against B6USA on behalf of its landlord, an entity owned by her parents.

The court finds that the equities weigh in favor of enjoining Mr. Hite from using the name "BaySix" and otherwise doing business using a similar name and website to that of B6USA.

**4.     Public Interest**

Both parties acknowledge that the potential consequence to the public in this case is the confusion that could arise among customers, vendors, and the general public. In trademark cases, the risk of confusion exists if "the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 116 (2004). The testimony clearly established existing confusion among customers. The debtor has received several phone calls from purchasers inquiring about orders apparently placed with Mr. Hite or his new company, and sought updates for unfilled orders generated by Mr. Hite through his new LLC.  While customers may have worked with Mr. Hite in the past, they did so in his capacity as a representative of B6USA, and he apparently did nothing to clarify that he was not acting on behalf of the debtor.  His departure and subsequent continued use of the name created the confusion, and he sought to capitalize upon that aspect.  Only B6USA's sole use consistent with ten years of business actions can minimize such public confusion and protect the corporate name and assets.

There is also a public interest that arises in the context of a bankruptcy case that is separate from the trademark issues: protection of the property of the estate to enable fair and equitable treatment of creditors and to preserve the ability of the debtor to reorganize. If Mr. Hite had clearly shown and established that the name "BaySix" and the business opportunities arising therefrom are not property of the estate, the court might view this matter differently, but absent compelling evidence – or any evidence for that matter – to that effect, the public's interest here weighs in favor of protecting the bankruptcy estate until a full adjudication on the merits can occur. Were the court

to find otherwise, Mr. Hite could usurp all of the debtor's business opportunities and the debtor would have no ability to reorganize.

Accordingly, the court finds that the public interest weighs in favor of allowing B6USA's motion for preliminary injunction and denying Mr. Hite's cross-motion.

## CONCLUSION

The court finds that each of the four factors for entry of a preliminary injunction weighs in favor of B6USA. Accordingly, on the cross-motions for preliminary injunction, the motion of the plaintiff, B6USA, is **ALLOWED,** and the motion of the defendant, Stephen M. Hite, Jr. is **DENIED**.

It is **ORDERED** that the defendant, Stephen M. Hite, Jr. is hereby **RESTRAINED** and **ENJOINED** from the following:

(1) Doing business as "BaySix Group" or any other similar name, or operating any entity that does business under such a name;

(2) Operating any website with a domain name of "baysixusa.com;" and

(3) Holding himself out to customers, vendors, or suppliers of B6USA or to the general public as having any affiliation with the debtor, B6USA, or as representing a successor entity to the debtor.

This preliminary injunction shall continue in effect until such time as a trial on the merits has been concluded and a further decision on injunctive relief is rendered, unless otherwise first amended or terminated by further order of the court.

## END OF DOCUMENT